**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| SONJA F. BUTLER,            § | |
|     PLAINTIFF,            § | |
| § | |
| VS.            § | CIVIL ACTION NO. 4:06-CV-580-Y |
| § | |
| MICHAEL J. ASTRUE,            § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT.            § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.     STATEMENT OF THE CASE

Plaintiff Sonja F. Butler brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Butler applied for disability benefits on September 15, 2003, claiming disability commencing July 28, 2000. (Tr. 64). She met the insured status requirements at all times relevant to the administrative decision. (Tr. 76, 83).

After the Social Security Administration denied her application for benefits both initially and on reconsideration, Butler requested a hearing before an administrative law judge (the "ALJ"). ALJ

Ward D. King held a hearing on May 24, 2005 in Fort Worth, Texas. (Tr. 298). Butler was represented by counsel. On June 29, 2005, the ALJ issued a decision that Butler was not disabled because she had the residual functional capacity (RFC) to perform a modified range of sedentary work activity.[1] (Tr. 18-25). The Appeals Council denied Butler's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. § 404.1567(a).

*Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that she cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

   1.  Whether appropriate weight and due deference was given to the expert medical opinions in the record; and

   2.  Whether the ALJ erred in his assessment of Butler's residual functional capacity.

D.  ADMINISTRATIVE RECORD

   1.  Medical History

Butler saw her primary care physician, Vernon Ellis, M.D., in April 2001 for complaints of pain in her feet, with left foot pain that radiated into her knee. Ellis observed left foot swelling and pain when he examined Butler. (Tr. 222-24). Butler was treated with pain relievers and anti-inflammatory medication, but progress notes reflect that Butler continued to complain of tingling and numbness in her feet. Ellis subsequently diagnosed peripheral neuropathy.[2]

In addition to foot pain, Butler complained of muscular pain, joint stiffness, and joint pain. (Tr. 222). Magnetic resonance imaging (an MRI) of her lumbar spine performed November 14, 2002 showed mild disc bulging at L4-L5 and L5-S1 with minor degenerative changes. (Tr. 194-195). Clinical examination by Ellis revealed lumbar spine pain with decreased range of motion on November 27, 2002, (Tr. 191, 193), with similar findings in her thoracic spine noted on December 30, 2002. (Tr. 191). Ellis diagnosed lumbar nerve root compression. (Tr. 152-193). During the period of September 2001 through April 2004, Ellis administered numerous pain-relief injections to relieve Butler's symptoms, and prescribed steroids and pain medication, such as Celebrex, Bextra, Mobic, Tylenol #4, and Ultracet. (Tr. 172).

---

[2] Neuropathy refers to a functional disturbance or pathological change in the peripheral nervous system. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1212 (29th ed. 2000).

On April 29, 2002, George Armstrong, M.D., reported that Butler had undergone electromyography (EMG) and nerve conduction studies of the feet that showed "rather profound peripheral neuropathy." (Tr. 228). At a follow-up visit on June 5, 2002, Armstrong noted that Butler's condition had improved with the use of Neurontin, a pain reliever that he had prescribed. She had less burning, tingling, and pain in her feet, although she continued to have some numbness on the plantar aspect of the toes of both feet. (Tr. 227).

Michael E. Wimmer, M.D., a physical medicine and rehabilitation specialist, evaluated Butler on April 24, 2002. (Tr. 230-232). On examination, Butler exhibited reduced reflexes in the patella bilaterally and unobtainable Achilles' reflexes bilaterally. Sensory examination to pinprick was diminished in a stocking distribution distal to the ankles, and Butler had decreased proprioception[3] in the toes. (Tr. 231-232). An EMG and nerve conduction studies of her legs and feet were performed and the findings were consistent with generalized symmetric peripheral polyneuropathy.[4] (Tr. 230).

Ellis also referred Butler to neurologist Lincoln Chin, M.D., who evaluated Butler on February 10, 2003. (Tr. 242). Butler complained of hip pain and burning and tingling of the feet, with symptoms severe enough to cause difficulty walking. (Tr. 242). Clinical examination found decreased sensation to pinprick to just above the ankle and reduced ankle jerks. Chin's impression was peripheral neuropathy. He suspected that Butler's low back pain and hip pain were separate from her peripheral neuropathy. (Tr. 243). A total body bone scan found moderately increased

---

[3] Proprioception refers to perception mediated by proprioceptors or proprioceptive tissues. *Id.* at 1469. Proprioceptors are sensory nerve terminals found in muscles, tendons, and joint capsules, which give information concerning movements and position of the body. *Id.*

[4] Polyneuropathy denotes that more than one nerve is involved. *Id.* at 1212.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 5**

activity in both feet, greater on the right than the left. (Tr. 240).

On March 24, 2003 Butler returned to Chin with complaints of soreness to the point where she was unable to walk, with tingling and burning in her feet, predominantly from the ankles down. She also complained of symptoms in her left hip and buttock. Butler was able to ambulate independently during the follow-up visit, her muscle strength was normal, and her sensation and reflexes were symmetrical. Chin referred Butler to the neuromuscular clinic at the University of Texas Southwestern Medical Center (UT Southwestern) for further evaluation (Tr. 239).

Jaya Trivedi, M.D., an assistant professor of neurology at UT Southwestern, examined Butler on November 7, 2003. (Tr. 245-248). Butler complained of tingling and soreness in her feet, as well as a burning sensation. She reported a loss of coordination and falling a few times. Butler also complained of hip pain bilaterally, pain over the tailbone area, and urinary urgency. (Tr. 245). Trivedi found decreased reflexes in the upper and lower extremities. Butler also had diminished sensation to pinprick and decreased joint position sense at the toes. Her gait was antalgic because of hip pain. Trivedi concluded that Butler had evidence of small fiber and large fiber sensory loss with symmetrically decreased reflexes in the ankles, which was consistent with a diagnosis of polyneuropathy. He attributed Butler's back and hip pain to arthritis. (Tr. 247).

On March 23, 2004, Ellis stated that Butler suffered from peripheral neuropathy, Type II diabetes, and lumbar nerve root compression that caused numbness and tingling in her feet and pain in her legs and hips. Standing and walking exacerbated her pain, and Butler required a cane for ambulation. Ellis opined that Butler was permanently disabled. (Tr. 132).

On April 16, 2004, Chin reported that Butler's symptoms and diagnostic findings confirmed a diagnosis of polyneuropathy and a positive bone scan had yielded abnormal findings in both feet.

He opined that Butler's symptoms made it difficult for her stand or walk for any length of time, and it was difficult for her to wear shoes for an extensive length of time. Chin opined that Butler's symptoms made it difficult for her to be gainfully employed. (Tr. 238).

Chin also provided a medical assessment of Butler's ability to perform work-related activities in light of her polyneuropathy. He indicated that she has disorganization of motor function in two extremities, resulting in sustained disturbance in gross and dexterous movements or gait and station and opined that Butler's condition met or equaled the severity of Listing 11.14. (Tr. 234). *See generally* 20 C.F.R. Part 404, Subpart P, App. 1, § 11.14. He indicated that Butler has difficulty wearing shoes because of pain. Chin estimated that Butler can walk less than two hours, stand less than two hours, and sit less than two hours in an eight-hour workday. (Tr. 235). He also opined that Butler could lift less than five pounds on a regular basis.

Butler was referred to Craig Danshaw, a pain management specialist, for her complaints of right arm pain, low back pain, pain at her tailbone, left hip pain with weakness in the lower legs, difficulty standing, and shakiness. (Tr. 280). Danshaw examined Butler and found that she had tenderness in the sacroiliac joint area bilaterally. He also noted right and left hip flexion, dorsiflexion, and quadriceps weakness. Danshaw diagnosed lumbar radiculitis,[5] right and left sacroiliitis,[6] and prominent muscle weakness. Danshaw recommended injections, aquatic therapy, and a Duragesic patch. (Tr. 281). A caudal block[7] was performed on March 24, 2004, as well as injections of the sacroiliac joints bilaterally. Butler reported 70% improvement in her symptoms.

---

[5] Radiculitis is inflammation of the root of a spinal nerve. *Id.* at 1511.

[6] Sacroiliitis is inflammation (arthritis) in the sacroiliac joint. *Id.* at 1593.

[7] A caudal block is a form of regional anesthesia produced by injection of a local anesthetic into the caudal canal, the sacral portion of the spinal canal. *Id.* at 221.

The caudal block and sacroiliac injections were repeated on April 14, 2004, and June 2, 2004. (Tr. 272, 275, 278).

Butler was also referred to Kenneth A. Mair, an endocrinologist, for evaluation of her diabetes. On January 25, 2004, Mair examined the Plaintiff and found that she had diminished ankle reflexes and diffusely decreased strength. Butler ambulated with a cane. Her gait was relatively normal and suggested better motor function than would be expected, given her exam. Mair diagnosed non-insulin dependent diabetes mellitus, neuropathy, obesity, and possible arthritis. (Tr. 295-296). Butler was 5 feet, $6^{1}/_{2}$ inches tall and weighed 260 pounds, with a body mass index (BMI) of 30 according to Mair's calculations. (Tr. 296). At a follow-up visit on January 26, 2005, Mair noted that Butler had been using insulin to control her diabetes for approximately ten months . He recommended daily exercise, but acknowledged that this would be difficult due to Butler's peripheral neuropathy (Tr. 294). Butler consulted dietician Marsha McCleskey on February 2, 2005. McCleskey noted that Butler had no regular physical conditioning program because of her significant nerve damage and pain. Butler also reported that she avoided long periods of sitting or standing. (Tr.293).

  2. Administrative Hearing

Butler testified that she was born January 11, 1958, and she has a GED. (Tr. 302). She was previously employed as a substitute teacher, and she had also worked as a cook and store clerk. (Tr. 75, 303).

Butler testified that she was unable to work because of peripheral neuropathy that caused pain, tingling, and burning in her feet. (Tr. 304). In addition, she complained of pain in her hip and spine that made it difficult for her to clean her house or cook meals. She testified that she needed

to sit down after standing for ten or fifteen minutes. She sat most of the time, but would also lie down two or three times each day. She read for entertainment. Butler testified that she was able to drive short distances. She used an electric cart or wheelchair when she went grocery shopping. (Tr. 305-07). In addition to her lower extremity problems, Butler testified that she had symptoms of neuropathy in her hands, but worse in her right hand. (Tr. 307). She also had problems with her right arm, and she testified that her arm goes to sleep all of the time. (Tr. 309).

Butler testified that she is 5' 7" and weighs 258 pounds. She has weighed approximately the same for five years. (Tr. 313). She testified that her weight did not affect her joints, knees, or ankles. Her hip pain caused her the most problems, but she noted that her hips had hurt even when she had weighed less. (Tr. 314).

The ALJ asked vocational expert Barbara Dunlap to consider a hypothetical individual of Butler's age with the same education level and work experience:

> Assume the individual can perform a full range of sedentary work, but with these limitations. No climbing ladders or scaffolds. The other positional changes can be performed only occasionally. The individual can perform limited walking, and by that I mean usually not over five minutes at a time and two hours total at an eight-hour work day and with a cane only. In other words, a cane is required. Finally, the individual requires a modified sit/stand option, and by that I mean usually able to change positions every 15 minutes.

(Tr. 316-17). Based upon this hypothetical question, the vocational expert testified that Butler's past work could not be performed, but she testified that there was other suitable work. Examples included the unskilled, entry-level jobs of hand laborers or simple assemblers, small parts packagers, and sorters. (Tr. 317). In response to questions posed by Butler's former counsel, the vocational expert indicated that raising the legs to knee level or above during work hours would not be tolerated. The jobs would not afford an opportunity for the employee to walk around to relieve

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 9**

discomfort. In addition, Dunlap agreed that a worker whose pain caused her to neglect work and interfered with her ability to meet production quotas could not perform the jobs identified. (Tr. 318).

    3.    ALJ Decision

The ALJ found that Butler had not engaged in substantial gainful activity since her alleged onset date of July 28, 2000. He further found that Butler's obesity, insulin-dependent diabetes mellitus, peripheral neuropathy, and mild degenerative changes constituted a severe combination of impairments, but found that Butler had no impairment or combination of impairments meeting or medically equaling the severity of a listed impairment. (Tr. 19). Instead, the ALJ found Butler capable of performing sedentary work, limited by no more than occasional positional changes; a modified sit/stand option; walking not more than five minutes at a time, with the use of a cane, and no more than two hours in an eight-hour workday; and the avoidance of climbing ladders and scaffolds. (Tr .23). Although Butler was precluded from performing her past relevant work, the ALJ accepted the vocational expert's testimony that there were a significant number of other jobs that Butler could perform. (Tr. 24). Accordingly, he determined that Butler was not disabled or eligible for disability insurance benefits. (Tr. 23-25).

E.    DISCUSSION

Butler contends that the administrative decision is not supported by substantial evidence because the ALJ failed to give due consideration to treating source opinions and other medical opinions in the record. She complains that the ALJ appears to have reached a decision that is not based on any medical opinion in the record.

Adjudicators must carefully consider every medical opinion received. SOCIAL SECURITY RULING 96-5p. When a treating physician provides a medical opinion that is well-supported by

medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record, it is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). Even if a treating source opinion is not entitled to controlling weight under the regulations, that does not mean the opinion should be completely rejected. In many cases, the opinion may be entitled to the greatest weight and should be adopted even if it does not satisfy the test for controlling weight. SOCIAL SECURITY RULING 96-2p.

The ALJ can decrease the weight assigned to a medical opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). But before rejecting a treating source opinion, the ALJ must consider the factors outlined in the administrative regulations, which include: the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-5p, 96-2p. The determination of disability always remains the province of the ALJ. *See id.* § 404.1527(e).

Both Ellis and Chin offered opinions attesting to Butler's disability. The ALJ identified the correct standards for reviewing treating source opinions and considered both opinions, but declined to afford either opinion controlling weight. (Tr. 22). With respect to Ellis's opinion, the ALJ found that Ellis had based his opinion in part on the existence of "nerve root compression," which was a diagnosis that was not supported by the evidence. In addition, the ALJ found that Ellis's repeated examinations of Butler since 2001 had failed to reveal any significant abnormalities, particularly neurological deficits. The ALJ explained that he declined to give Ellis's opinion controlling weight

because little objective evidence supported the degree of limitation that Ellis assessed. (Tr. 22).

Butler asserts that the ALJ's stated reasons for rejecting Ellis's disability opinion are patently incorrect. (Plf br p. 13). More specifically, Butter asserts that findings reflecting significant abnormalities are documented in Ellis's records because Ellis frequently found numbness in Butler's feet, and EMG studies confirmed the presence of polyneuropathy. The ALJ, however, never disputed Butler's peripheral neuropathy or its related symptoms. Instead, he indicated that he agreed that Butler was limited, but he declined to assign controlling weight to opinions that Butler was disabled. (Tr. 22). A review of Ellis's medical records does not indicate that the ALJ misread Ellis's reports or understated Ellis's objective findings, and the ALJ adequately explained why he found Ellis's opinion was not wholly supported by the evidence.

The ALJ also reviewed Chin's medical opinion. The ALJ noted that Chin had correctly identified Butler's neuropathy, but found no evidence to support Chin's determination that Butler's condition met or equaled the severity of a listed impairment. (Tr. 22). *See generally* 20 C.F.R. Part 404, Subpart P, App. 1, § 11.14. The ALJ noted that Butler's gait with the use of cane was relatively normal, she demonstrated good coordination, and her problems with mobility were considered secondary to her hip pain and not a result of neurological deficits. Butler does not dispute this portion of the ALJ's decision, but asserts that the ALJ provided no basis for also rejecting Chin's assessment of Butler's ability to perform work-related activities. However, the ALJ stated that he was declining to afford controlling weight to Chin's opinions because the objective evidence demonstrated that Butler was limited, but did not support a finding of disability. (Tr. 22). The ALJ's decision reflects that the ALJ's reasoning was intended to address both Chin's opinion that

Butler met Listing 11.14 and Chin's assessment of Butler's employability[8] and her ability to perform work-related tasks such as sitting, standing, and walking. (Tr. 22).

Butler also contends that the ALJ did not comply with the regulations that require consideration of the medical source statements prepared by state agency physicians. Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence at the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. § 404.1527(f); SOCIAL SECURITY RULING 96-6p. The administrative law judge and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SOCIAL SECURITY RULING 96-6p.

The state agency medical consultants found that Butler was capable of work activity at the medium level of exertion. (Tr. 265). The ALJ expressly considered the opinions of the state agency medical consultants and concurred with their determination that Butler's impairments did not meet or equal any listed impairments. (Tr. 19). The ALJ also stated that he was giving the prior state agency determinations significant weight, but not controlling weight, because later-acquired evidence reflected that Butler was more limited than the state agency medical consultants had found. (Tr. 19). Butler's complaint that the ALJ did not comply with the regulations governing the assessment of state agency determinations is meritless.

Butler complains that the ALJ, in accepting none of the foregoing medical opinions, reached his own conclusions about her abilities without the benefit of any medical opinion whatsoever.

---

[8] Statements by a medical source that a person is disabled or unable to work are opinions on issues reserved to the Commissioner and will not be given any special significance. 20 C.F.R. § 404.1527(e)(3).

Butler asserts that without this evidence the ALJ's own assessment of her condition and residual functional capacity (RFC) is improperly based on his own interpretation of raw medical data. She cites the Fifth Circuit's opinion in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), to support her position.

In *Ripley*, the Fifth Circuit reviewed the ALJ's duty to fully and fairly develop the record and noted that the ALJ should usually request a medical source statement describing the types of work a claimant remains capable of performing. *Id.* at 557. But the Fifth Circuit also noted that the absence of such a statement does not, in and of itself, render the record incomplete. *Id.* When no such statement has been provided, the inquiry focuses on whether substantial evidence nonetheless is present in the existing record. *Id.* The court is to scrutinize the record as a whole when determining whether substantial evidence supports the administrative decision. *See generally Greenspan v. Shalala,* 38 F.3d 232, 240 (5th Cir.1994).

Butler contends that the RFC assessment in her case is unsupported by substantial evidence. RFC is what an individual can still do despite his limitations. 20 C.F.R. § 404.1545; SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered. *Id*. The ALJ will also discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id*. Only after considering a claimant's mental and physical abilities on a function-by-function basis may RFC be expressed in terms of the exertional level of the work, be it sedentary, light, medium, heavy, or very

heavy. *Id*. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but presumptions, speculation, and supposition do not constitute evidence. SOCIAL SECURITY RULING 86-8.

Butler contends that there is no evidence that the ALJ engaged in the required function-by-function assessment before concluding that his RFC assessment was supported by the medical evidence generally. A review of the ALJ's decision, however, establishes that he sufficiently outlined the basis for his RFC assessment. The ALJ weighed the evidence from Butler's treating sources and Butler's subjective complaints. Based primarily on evidence of neuropathy in Butler's lower extremities, the ALJ found Butler should be limited to sedentary work with some additional accommodations. (Tr. 21). Among those accommodations were Butler's need for a generous sit/stand option, limited walking, and the use of cane. The ALJ also precluded her from climbing and limited her to no more than occasional changes in position, such as stooping or crouching. (Tr. 22-23). The ALJ's decision to limit Butler to sedentary work with these additional accommodations is supported by substantial evidence and reflects reasonable inferences based on the record.

Butler contends that there are a number of other shortcomings in the ALJ's decision. In particular, she complains that the ALJ ignored Chin's opinion that Butler would have difficulty wearing shoes. The ALJ did not specifically address Chin's opinion that wearing shoes was painful for Butler; however, as discussed *supra*, ALJ considered the medical opinions that Ellis and Chin offered and found them to be unsupported by the record. Although a more detailed discussion might have been preferable, Butler has not shown that the ALJ's failure to be more specific warrants disturbing the Commissioner's decision. In her disability paperwork, Butler indicated that she wears orthopedic shoes and that she wears her shoes most of the time because her feet were worse when

she did not wear them. (Tr. 101, 112).

Butler also contends that the ALJ's assessment is based on a misperception about her obesity. The Social Security rulings recognize that obesity, although not a listed impairment, can reduce an individual's occupational base for work activity in combination with other ailments. See SOCIAL SECURITY RULING 02-1p;  SOCIAL SECURITY RULING 96-8p.  A claimant's obesity must be considered at all steps of the sequential evaluation process.  SECURITY RULING 02-1p.

Butler acknowledges that the ALJ recognized her obesity as a severe impairment, but asserts that he understated her obesity and its impact on her ability to work because he relied on Mair's faulty calculation that Butler's body mass index (BMI) was 30 when her actual BMI is 40.408, which places her in the morbidly obese range.  A review of the ALJ's decision reflects that he considered her obesity as a matter of her weight, and did not base his assessment on an erroneous belief about her BMI.  In addition, Butler identified no additional limitations imposed by her obesity and testified that she did not have problems with mobility or her joints as a result of her obesity.  Her counsel, when given the opportunity, did not question the vocational expert about any functional restrictions allegedly caused by Butler's obesity. The ALJ assessed a RFC for a limited range of sedentary work, and there is no indication that Butler's weight further restricted her RFC or rendered her disabled when considered in combination with her other impairments.  Accordingly, there is no basis for disturbing the Commissioner's decision.

Contrary to Butler's assertions, the ALJ complied with the relevant administrative regulations and rulings in evaluating the medical opinions in the record, and the lack of a medical source statement to support the ALJ's assessment of her RFC does not warrant disturbing the Commissioner's decision.  The administrative record contains substantial evidence supporting the

ALJ's determination that Butler retained the capacity for a modified range of sedentary work activity.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until May 11, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until May 11, 2007 to serve and file written objections to the United States Magistrate Judge's proposed findings,

conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED APRIL 20, 2007.


   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE